UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JESSICA M. HAMILTON, Plaintiff, v. MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | No. ED CV 08-00754-VBK<br>MEMORANDUM OPINION AND ORDER<br>(Social Security Case) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

considered the medical evidence, including treating physician opinions; and

2. Whether the ALJ properly considered Plaintiff's subjective complaints and properly assessed her credibility.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**PROCEDURAL CHRONOLOGY**

On February 17, 2004, Plaintiff filed applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging an onset date of November 10, 2002. (AR 81-83, 391-394.) After receiving administrative denials, Plaintiff requested a hearing before an ALJ, which occurred on December 15, 2004. (AR 459-473.) This resulted in an unfavorable decision issued on February 8, 2005. (AR 45-56.) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light, simple work in her past occupation as an office helper. (AR 56.)

Plaintiff was successful before the Appeals Council, which issued a remand order on November 29, 2005. (AR 77-79.) In that order, the ALJ was ordered, among other things, to obtain all available updated medical records from treating sources; provide a supplemental hearing; and give further consideration to Plaintiff's maximum RFC, including possible non-exertional limitations. The ALJ was ordered to evaluate the medical opinions of her treating, examining, and reviewing physicians, and state the weight to be accorded each of those opinions. (AR 78.)

Pursuant to the remand order, a hearing took place before the ALJ on July 18, 2006. (AR 474-498.) A second decision, again unfavorable, was issued on July 23, 2006. (AR 19-34.) In this decision, the ALJ concluded that Plaintiff's RFC would allow her to perform work at all exertional levels, but only in low-stress jobs, which would constitute simple work requiring average pace and production, no work with the general public, limited coworker contact and no responsibility for the safety of others. (AR 24.) The ALJ adopted various occupations identified at the hearing by the vocational expert ("VE") as being within Plaintiff's RFC. (AR 33.)

Plaintiff's request for review by the Appeals Council (AR 16) was accompanied by the submission of additional evidence (AR 8, 12, 396-458), but it was denied (AR 9-13), thus rendering the ALJ's July 23, 2006 decision the final decision of the Commissioner, subject to review in this action.

**I**

**THE ALJ PROPERLY CONSIDERED THE RELEVANT MEDICAL EVIDENCE OF RECORD**

In her first issue, Plaintiff asserts that the ALJ failed to properly consider the relevant medical evidence of record, including the opinions of treating physicians. Although acknowledging that the ALJ reviewed the opinions of these physicians, Plaintiff's Complaint appears to be that the ALJ failed to provide "a detailed explanation as to what weight is given to each of the treating physician opinions ..." (JS at 4.)

In his decision, the ALJ incorporated by reference his prior decision of February 8, 2005. (AR 26, referencing AR 48-56.) Consequently, it is important to lend perspective to the extent of the

remand order of the Appeals Council. (AR 78-79.) The Appeals Council noted that in the request for review, Plaintiff's representative submitted evidence indicating that she has been HIV positive for several years. Therefore, it was found that further evaluation is needed "with respect to this impairment." (AR 78.) The ALJ was thus ordered to provide a new hearing, give further consideration to her maximum RFC, including non-exertional limitations, and evaluate the medical opinions of the treating, examining and reviewing physicians, stating what weight is given to such opinions.[1] (Id.)

**A. Physical Health Issues.**

Plaintiff devotes substantial attention to the opinions of Dr. Ahmed, an orthopedist. She noted that on February 26, 2004, Dr. Ahmed found swelling on Plaintiff's left knee as well as muscle spasms in the lumbar spine, and recommended that Plaintiff utilize an assistive device for ambulation. Dr. Ahmed limited Plaintiff to walking only 10 to 15 minutes without an assistive device. (AR 174.)[2] Dr. Ahmed also limited Plaintiff to standing and walking less than two hours out of an eight-hour day and restricted her to lifting less than ten pounds.

On October 28, 2004, Dr. Ahmed noted that Plaintiff is under his care for right wrist CTS, right lateral epicondylitis, lumbar

---

[1] The ALJ noted in his second decision that in the remand order the Appeals Council did not raise any contentions with regard to the ALJ's prior evaluations of the assessments of Dr. Plourde, a treating psychologist. Nevertheless, the ALJ evaluated Dr. Plourde's opinions in his second decision, and the Court will include that evaluation in its discussion.

[2] This evaluation predates the amended onset date of April 1, 2004. (AR 21, 25, 44.) Thus, the relevance of this particular evaluation is questionable.

herniated disc, and left knee internal derangement. (AR 234.)

On December 9, 2004, Dr. Ahmed noted that Plaintiff is still under his care and is unable to do any heavy lifting due to her low back pain. She has been diagnosed with carpal tunnel syndrome, which makes gripping, grasping and carrying objects for long periods of time difficult. Dr. Ahmed noted that a left knee MRI was still pending, but he suspected possible internal derangement. He concluded that Plaintiff was temporarily disabled pending diagnostic tests, treatment and therapy. (AR 251.)

On October 20, 2005, Dr. Ahmed completed a physical RFC questionnaire form noting positive straight leg raise, decreased lumbar range of motion, muscle spasms, and other possible test results. As a result, Dr. Ahmed limited Plaintiff to sitting about two hours per day and standing and walking less than two hours per day. He noted she would have to be allowed to change positions, would need extra unscheduled breaks during the course of an eight-hour workday, and would likely miss work about three times a month due to physical impairments. (AR 355-358.)

In the first decision, the ALJ devoted substantial attention to Dr. Ahmed’s opinions. He first summarized Plaintiff’s treatment from Dr. Ahmed, which began on November 6, 2003, and then continued. (AR 49-52.) He discussed a May 27, 2004 evaluation. (AR 50.) Plaintiff complained of left knee and low back pain and stated she was not responding to physical therapy or medication. As the ALJ noted, Plaintiff claimed her left knee gave out twice and she fell. But, the ALJ also noted that Dr. Ahmed found normal gait, 5/5 motor strength at the upper and lower extremities, normal patella and Achilles reflex, positive straight leg raising on the left and right, positive

McMurray's test on the left knee, some notable edema at the pre-patellar area, and a full range of motion of the cervical spine. (AR 50.)

After similarly summarizing Dr. Ahmed's other examinations, the ALJ explicitly stated he did not give any weight to Dr. Ahmed's assessment of February 26, 2004 which limited Plaintiff to a significantly reduced range of sedentary work. He indicated this was because Dr. Ahmed's opinion is not supported by the objective evidence. For example, Dr. Ahmed limited Plaintiff to lifting and carrying less than ten pounds occasionally based on "clinical exam/x-rays." The ALJ noted, however, that the only x-rays through February 26, 2004 were negative x-rays of the left foot and left ankle. (AR 51, citing Exhibits.) In addition, there was an unremarkable x-ray of Plaintiff's left knee on October 17, 2003. (Id.) There were no fractures, subluxations, or joint deformities other than mild edema of the left knee. There was no evidence of any ligament tear, although Plaintiff had alleged this at a physical therapy evaluation on October 17, 2003. (Id., citing Exhibits.) The ALJ noted that Dr. Ahmed diagnosed Plaintiff with herniated lumbar disc, but there were no x-rays of the lumbar spine through the date of this evaluation. The ALJ noted that a lumbar spine x-ray on April 14, 2004 was normal. Further, Dr. Ahmed's progress notes did not document herniated lumbar disc with any findings on examinations. Thus, the ALJ found that Dr. Ahmed's findings were not consistent with the extreme exertional limitations he assessed on February 26, 2004. (Id.)

The ALJ continued by noting that Dr. Ahmed later assessed extreme sitting, standing and walking limitations. (AR 51.) For the same reasons, the ALJ discounted these conclusions.

The ALJ continued on to discuss Dr. Ahmed's September 16, 2004 opinion that Plaintiff is temporarily totally disabled. (AR 52, citing Exhibits.) Dr. Ahmed indicated Plaintiff was unable to do any lifting due to low back pain and has been diagnosed with carpal tunnel syndrome, which makes gripping, grasping and carrying objects for long periods of time difficult. (Id.) Again, the ALJ failed to give any weight to this conclusion because he found there was no evidence of any significant deterioration in Plaintiff's condition since the February 26, 2004 assessment by Dr. Ahmed. Later examinations showed no motor strength deficits of the upper or lower extremities. (Id., citing Exhibits.) Dr. Ahmed failed to mention in any of his later examinations any limitation in range of motion of the lumbar spine. (Id.)

An ALJ is not required to accept the opinion of any physician, including the treating physician, if it is brief, conclusory and not adequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). In his second decision, the ALJ did address subsequent reports from Dr. Ahmed, and again rejected Dr. Ahmed's conclusions. For example, the ALJ noted a physical residual functional capacity questionnaire of October 29, 2005 (AR 28, 355-358), in which Dr. Ahmed assessed that Plaintiff was able to lift less than 30 pounds, sit two hours in an eight-hour workday, stand/walk less than two hours in an eight-hour workday, with a need to change positions and take unscheduled breaks, and no repetitive bending or stooping. Dr. Ahmed diagnosed herniated lumbar disc with radiculitis and left knee chondromalcia patella.

The ALJ also noted a disability opinion of Dr. Ahmed set forth in a May 18, 2006 letter. (AR 31, 389.) Dr. Ahmed there asserted that

Plaintiff could not return to work because of acute dislocation with relocation of the left patella, and left index finger strain, and resulting low back pain. (Id.) The ALJ noted, however, that imaging in June of 2005 showed no lumbar disc herniation, and an MRI of Plaintiff's left knee showed no evidence of any severe impairment. (AR 31, 352-353, 366-367.) Moreover, the ALJ noted that Plaintiff had not received treatment for any physical impairment since June 2005. (AR 31.)

In an October 2005 statement by Dr. Ahmed, he asserted that pain or other symptoms affected Plaintiff's attention and concentration. (AR 356-358.) The ALJ rejected this opinion as unsupported by objective medical evidence, and noted Dr. Ahmed's lack of experience in mental health matters as an additional factor. (AR 28, 30; see 20 C.F.R. §§404.1527(d)(5), 416.927(d)(5)(2008).)

It is clear to the Court that while Plaintiff complains that the ALJ failed to articulate clear and convincing reasons to reject Dr. Ahmed's opinions, including the opinions he offered subsequent to the issuance of the ALJ's first decision, the exact opposite appears to be the case. The ALJ provided extremely detailed reasons for rejecting Dr. Ahmed's opinions both as to Plaintiff's physical and mental condition. Indeed, while Plaintiff has spent substantial time in the JS summarizing Dr. Ahmed's conclusions, she has failed to provide any reply to the Commissioner's examination of the record, which indicates the great detail provided by the ALJ in evaluating and ultimately rejecting Dr. Ahmed's opinions.

**B. Dr. Plourde.**

In the JS, Plaintiff sets forth a summary of this psychologist's

opinions. Again, the Court must note the ALJ's detailed discussion in his first decision of Dr. Plourde's conclusions and opinions. (AR 53-54.) After carefully summarizing Dr. Plourde's various diagnostic opinions, the ALJ rejected these assessments, finding that Dr. Plourde did not support them with any mental status examinations or psychological testing. He noted that Dr. Plourde's progress notes mostly consisted of Plaintiff's subjective reports with no supporting objective evidence. He finally noted that Dr. Plourde's assessments were inconsistent with normal mental status examinations by the consulting examiner, Dr. Nguyen and at Rio Hondo on November 24, 2004. (JS at 54, citing Exhibits.)

Plaintiff again devotes substantial time to summarizing some of this prior information provided by Dr. Plourde. (See JS at 5, et seq.)

The additional evidence in the record from Dr. Plourde is a July 8, 2005 letter "To Whom It May Concern" (AR 354), which Plaintiff cites in her portion of the JS. (JS at 8.) Dr. Plourde essentially mirrors her prior conclusions, which include a diagnosis of post-traumatic stress disorder, dysthymic disorder, and major depressive disorder, recurrent, with a global assessment of functioning ("GAF") score of 40. (AR 354.)[3]

The ALJ found Dr. Plourde's assessment of Plaintiff's GAF to be

---

[3] The Court agrees with the Commissioner's contention that the GAF score is not an assessment of a person's residual functional capacity, or of disability in the Social Security context. It is, rather, a means of reporting on the judgment of a clinician as to a person's overall level of functioning. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., (DSM-IV), American Psychiatric Assn. (1994) at 30.) The GAF score is useful in planning treatment and in predicting the impact and outcomes of treatment. (Id.) See also Alvarez v. Barnhart, 2002 WL 31466411 (W.D. Tex. 2002).

inconsistent with her treatment records, which showed "intact sensorium, intact memory and intact concentration, with fair insight, judgment and reality orientation, and no thought process/content impairment." (AR 29, citing AR 381-384.)

The Court concludes that the ALJ adequately addressed Dr. Plourde's opinion.

**C. <u>Dr. Devkis and Dr. Kuhn</u>.**

Drs. Devkis and Kuhn are associated with Miller Children's Hospital. Plaintiff extensively quotes a December 13, 2004 report of Kimberly Russell, a certified physician's assistant. (JS 6-7, AR 236.) Plaintiff also notes a December 19, 2005 report by Dr. Devkis and Sherry Hytrek, a physician's assistant, noting that Plaintiff suffers from many of the comorbidities of HIV, including peripheral neuropathies and depression, that she has recently been having severe panic attacks with hyperventilation, negative cardiac and pulmonary workup. (AR 389.) Plaintiff further notes a July 17, 2006 report by Ms. Hytrek indicating that Plaintiff's most debilitating problem is severe panic attacks with hyperventilation. (AR 390.)

The ALJ addressed this additional evidence. With regard to the assessments by these providers that Plaintiff has debilitating panic attacks, the ALJ noted that, "the medication and psychotherapy notes do not show the frequency and intensity of panic/anxiety attacks alleged by the claimant ..." (AR 29.) The ALJ then goes on to summarize in detail these progress notes from the year 2005, which indeed do not demonstrate a heightened or consistent level of panic attacks. Other than on a few occasions in which while they were reported, they did not result in any change in medication. In fact,

after one complaint of panic attacks, Plaintiff's psychiatric medication was decreased. (See AR at 30, citing Exhibits.) The ALJ concluded that "the medication and psychotherapy notes show that the [Plaintiff's] panic/anxiety attacks appear to be adequately controlled with medications, and have not been increasing in severity, ..." (Id.) Further, the ALJ noted that there is an absence of treatment records from these physicians or the assistant, no evidence that the assertions are based on mental status and/or psychological testing, and no indication that these providers reviewed treatment records from Rio Hondo Mental Health. (AR 30.)

**D. Linda Young, MPH.**

Additional evidence reviewed by the ALJ included a June 2005 statement by Plaintiff's case manager, Linda Young, MPH, which asserted that Plaintiff had chronic fatigue syndrome. (AR 31, 361.) The ALJ found that there was no medical evidence to support this contention, and indeed, the ALJ concluded that, "there is no evidence to show that the [Plaintiff] has any functional limitations resulting from HIV." (AR 31.)

Also noted was a statement by a physician's assistant on February 11, 2005 that Plaintiff has sensory polyneuropathy. The ALJ noted that Dr. Alpern, the testifying medical expert ("ME"), observed that nerve conduction study showed only mild delay and possible sensory changes, which is not severe. There was no evidence of problems with the left index finger since the amended alleged onset date. (AR 31.)

With regard to a May 2004 opinion of a non-examining State Agency physician, Dr. Friedman, in which it was opined that Plaintiff had the RFC for light work (AR 191-201), the ALJ determined, after weighing

all the medical evidence, to afford more credibility to the testimony of the ME, Dr. Alpern, who had reviewed significant evidence in the record subsequent to the May 2004 opinion by Dr. Friedman. (See 20 C.F.R. §§404.1527(d)(3), (4), 416.927(d), (3), (4)(2008).)

In sum, Plaintiff's assertion that the ALJ failed to fully weigh the relevant medical evidence by treating and non-treating sources, or to explain why particular weight was assigned to these sources, is not borne out by the record. The Court finds no error as to Issue No. 1.

**II**

**THE ALJ PROPERLY ASSESSED PLAINTIFF'S CREDIBILITY**

Plaintiff asserts in her second issue that the ALJ failed to properly assess her credibility.

In the prior decision, which the ALJ incorporated, he made the following credibility assessment:

> "I have also considered [Plaintiff's] subjective complaints in making my determinations. However, I cannot find greater limits or total disability based on [Plaintiff's] subjective complaints because they are not fully credible. [Plaintiff's] subjective complaints and alleged limitations are out of proportion to the objective findings as noted above. The lumbar spine x-ray was negative and the left knee x-rays showed only a large effusion. There is no evidence of any cortical interruption, ligament tear or joint abnormalities. Dr. Ahmed's examinations on May 27, 2004 and July 22, 2004 showed crepitus, clicking and popping of the left knee, but range of motion of the left knee was full (Exhibit 19F/23-

26) and there were no motor strength deficits of the upper and lower extremities (Exhibit 19F/26). The electrodiagnostic studies showed mild sensory polyneuropathy (Exhibit 19F/31). [Plaintiff] alleges disabling problems with her concentration and memory, but the mental status examinations were normal.

[Plaintiff's] subjective complaints and alleged limitations are not consistent with the treatment she receives. [Plaintiff] has received only conservative treatment, consisting of physical therapy, knee, wrist and back braces and medications for her left knee and low back. She has not received any epidural injection and Dr. Ahmed has not recommended surgery. No MRI has been performed. Both [Plaintiff] and Dr. Ahmed claim she has no improvement from conservative treatment, but there is no evidence [Plaintiff] has requested, or Dr. Ahmed has referred her to another specialist for a second opinion. [Plaintiff] alleges a history of disabling mental impairments but she did not seek mental health treatment until June 2004. It is reasonable to assume that if [Plaintiff] were experiencing the disabling problems alleged, she would have received more aggressive treatment and she would have sought mental health treatment earlier.

The credibility of [Plaintiff's] subjective allegations is questionable given her lack of cooperation at the consultative psychiatric evaluation. Also, when [Plaintiff] was told by the examining doctor on February 19, 2003 that she should be able to attend GAIN classes without

difficulty, she took the GAIN exemption paper back and left the clinic and said, 'I knew I should have gone to a different doctor.' That indicates [Plaintiff] is attempting to appear more limited than she actually is in order to further her own personal interests.

Finally, I have considered the subjective allegations at Exhibits 2E-4E but I find they do not support additional limitations in light of the above discussion."

(AR 54-55.)

In the second decision, the ALJ noted that in its remand order the Appeals Council did not raise any issue concerning the above-quoted credibility evaluation. Nevertheless, the ALJ added to that discussion in the second decision:

"[Plaintiff's] subjective complaints and alleged limitations are out of proportion to the objective findings as noted above. There is no evidence of severe disuse muscle atrophy that would be compatible with [Plaintiff's] alleged inactivity and inability to function.

[Plaintiff's] subjective complaints and alleged limitations are not consistent with her treatment. There is little in the way of treatment for [Plaintiff's] alleged physical problems since the amended alleged onset date. [Plaintiff] alleges that she is waiting for surgery for her back and hands, but the objective findings do not indicate that surgery is necessary. [Plaintiff] does not use an assistive device for ambulation nor has one been prescribed. There is no evidence of regular follow ups for HIV.

> [Plaintiff] was not fully compliant with her medications and she missed many appointments with her social worker. It is reasonable to assume that if [Plaintiff] were experiencing the disabling problems alleged, she would have received more aggressive treatment and she would have been fully competent with treatment."

(AR 32.)

Plaintiff asserts that these two analyses of her credibility fail to comply with the mandates of Social Security Ruling ("SSR") 96-7p, and applicable law. (See JS at 19.)

In the Court's view, the ALJ's credibility evaluation met the requirements of both regulation and case law. The familiar two-pronged test of Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986) requires that after a claimant produces medical evidence of an underlying impairment which is reasonably likely to be the cause of alleged symptoms, an ALJ must provide specific, clear and convincing reasons to reject allegations of subjectively disabling symptoms. (See Thomas, 278 F.3d at 960.)

Here, the ALJ found that Plaintiff did not have any severe physical impairment which would reasonably be likely to cause her alleged pain symptoms and physical limitations. (AR 24.) Plaintiff has not challenged that finding, and therefore, the first prong of the Cotton test, with regard to the issue of physical limitations, has not been satisfied. (See also 28 C.F.R. §§404.1529(b), 416.929(b)(2008).)

The ALJ did find that Plaintiff had severe anxiety and depression. (AR 24.) In evaluating her credibility, the ALJ may use ordinary techniques of credibility evaluation, such as use of

medication, treatment history, and history of compliance with treatment. (See 20 C.F.R. §§404.1529(c)(3)(IV)(v), 404.930, 416.929(c)(3)(IV)(v), 416.930 (2008).) The ALJ made a notation in his credibility analysis that Plaintiff had missed numerous appointments for her mental health treatment in 2005 and 2006, and that she had taken no medication for any alleged mental impairments since January 2006. (See AR 27, 334-335, 373, 382-383.)

Similarly, the ALJ may consider conflicts between a claimant's testimony and the medical evidence. The ALJ here noted Plaintiff's allegation that she has severe and consistent panic attacks, but to the contrary, her medical records contained few indications of panic attacks. (See AR 27, 331-335, 342-347.)

In the first decision, which was, as noted, incorporated in the second decision, the ALJ discounted Plaintiff's credibility because of inconsistencies between allegations of physical and mental impairment and the medical evidence which showed little evidence of physical abnormality, and a normal mental status examination. (AR 54.) In addition, Plaintiff's treatment was not consistent with her allegations. (AR 54-55.) The ALJ also noted Plaintiff's poor cooperation with a mental status examination administered by consulting psychiatrist Dr. Nguyen in April 2004, and a statement by Plaintiff in 2003 that she "should have gone to a different doctor" when she unsuccessfully attempted to obtain a GAIN exception. (AR 55, 187, 301.) The ALJ concluded from this evidence that Plaintiff tried to appear more limited than she actually was.

All in all, the Court finds no insufficiency in the ALJ's credibility evaluation in either the first or second decision. The ALJ applied ordinary techniques of credibility evaluation, and his

summary of the evidence in making these evaluations was correct.

For the above-stated reasons, the Court finds no error with regard to Plaintiff's second issue.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: March 26, 2009

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE